## Nancy Pinson et al v. Edward McGehee.

1. TRUSTEE—CONTINUING TRUST—LIMITATIONS.—P., being embarrassed by sundry debts, in September, 1849, conveyed certain lands and slaves to M., as trustee, who assumed and paid said debts, and was, by said arrangement, to hold and use said property until, from the net proceeds, and after defraying expenses of same, P., should reimburse himself for such expenses. M. continued to manage the property until 1856 or 1857, when an account was taken and P. found indebted $8,000. By agreement of parties, D. B. P., as agent of M., took said management, and continued until 1858, when he died, and thereupon N. P. continued the management, with the understanding that the proceeds should be applied as before. This is a continuing trust to which the statute of limitations does not apply, and the allegations should be met by plea or answer to the merits.

Appeal from the chancery court of Wilkinson county. SMILEY, J.

The facts are sufficiently stated in the opinion of the court.

Appellant assigned the following error:

That the court below erred in overruling defendant's demurrer to complainant's bill of complaint.

*H. S. Van Eaton*, for appellants.

The demurrer was well taken and should have been sustained. As to the statutes of limitation, what is the nature of the instrument on which the bill appears to be founded? We insist that it is simply a mortgage. In 1849, appellee undertook to pay divers debts for appellants, and to secure him, they, on the 19th day of February, 1849, executed in his favor

the instrument in question, and by which they conveyed to him the lands and divers slaves. This conveyance is conditional, for it is expressly provided, that in case the grantors, the Pinsons, shall repay McGehee, and save him harmless, then the "obligation to be null and void," being designed by the parties to operate as a security for the repayment of money, and is therefore clearly a mortgage. 13 S. & M., 440; Prewett v. Dobbs, 24 Miss., 673.

But it may be contended that the instrument is a trust, and in the technical sense, to which the statute would not attach. This position we do not think tenable. 2 Tuck. Com., 427.

But even if it is a trust, unless it is of a "particular class," the statute of limitations directly applies. Rowe v. Bloodgood, 7 Johns. N. Y. Ch. Reps., 110; Angell on Limitations (2d ed., 1846), 174, 175. Could McGehee have sued the Pinsons at law, for the claim, to enforce the collection of which, apparently, he filed his bill? Of this, we think there can be no question. McGehee claims that there is due him on account stated and liquidated, an amount that has been fixed and agreed to by all the parties, at a definite sum, viz: $8,000 00. For the recovery of this sum he had a clear remedy at law, and, therefore, we contend, the statute applies; and commenced running against his right to foreclose, or seek his remedy in equity, immediately upon the statement of the account, which, according to the statements of the bill, was in 1856 or 1857—say the first of January, 1857.

If the statute attaches at all, it attaches from that date where appellants owed him $8,000 on open account. Then to January 29, 1862, the date of the first act of the legislature of this state, suspending the statute of limitations, would be five years and twenty-nine days; since the statute commenced running again after the war, to the filing of the bill, September 6, 1869, is, at any rate, over two years, making over seven years in all, since the bar of the statute attached. See Hutch. Code, 829, arts. 1, 2; ib., 830, arts. 7, 10. We contend, however, that the bar has attached under the provisions of the Revised Code of 1857, 402, art. 28; ib. 399, 400

arts. 5, 6; and, as McGehee's remedy at law is barred, the remedy in equity is also barred.   Rev. Code, 399, art. 4.

The demand is stale, and not such as will be enforced in a court of equity.   By complainant's own showing, he has made no effort to collect his debt since " some time in 1856 or 1857 ; " in fact, soon after that, he abandoned all care of the mortgaged property to the possession and management of appellants themselves.

Under all these circumstances, we contend the bill shows no equity on its face, and, besides, that it is indefinite and uncertain as to the nature of the indebtedness claimed, or the relief sought.   Again, it appears from the bill, that two of the original makers of the mortgage, are dead, viz: E. A. Pinson and D. B. Pinson, and their representatives are not made parties.   It is well settled by the decisions, that the representatives of deceased mortgagors, must be made parties to a proceeding to foreclose.

*H. F. Simrall,* for appellee.

The assignment of error presents but a single question: did the court of chancery err in overruling the demurrer to the bill?   The grounds of the demurrer are, that the cause of the suit is barred by the three and the seven years statute of limitation ; that the demand is stale, and that the description of the demand is vague, indefinite and uncertain.

The facts are, that the Pinsons were largely in debt, with no present means of payment; without credit in the open money market, to raise means, and their property was in danger of being sold for their debts.   McGehee undertook to pay these debts out of the annual produce of the property, and to reimburse himself after defraying the expenses of the property and the family.   The time within which this could be done being uncertain, no time was fixed by the parties, and McGehee was entitled to the earnings of the property until he was paid off.   The contract created, in equity, " a continuing trust," against which the statute of limitations does not run, as to the immediate parties thereto and their privies

in law and blood. Murdock v. Hughes, 7 S. & M., 233; De-couche v. Santin, 2 Johns. Ch. R., 190; 3 Littell, 177; 3 Yerger, 210; 4 Dess., 474; 2 ib., 53. In Provost v. Gratz, 6 Wheat., 481, it is clearly laid down "that in equity no length of time is a bar to a trust clearly established." Baker et ux. v. Whitney et al., 3 Sumner, 426; 2 Story's Eq. Jur., § 1520; Redfield's edition, ib., § 1520, *b*. See, also, Portlock v. Gardner, 1 Hard., 594, 604; Att'y. Gen'l v. Fishermen's Co., 5 My. & Cr., 16, 17. In Murdock v. Hughes, above cited, it is said that "time does not begin to run so as to make a bar, until a denial of the right of the beneficiary, and the assertion of an adversary claim." The bill shows no such denial of right, nor any assertion of an adversary claim. See Story's Eq. Jur., § 1520, *a*. But, surely there was nothing in the transactions or conduct of McGehee, during all that time, from which inductions unfavorable to him and his claims ought to be indulged. There were no circumstances unfavorable to the continuance of the trust; no obscurity as to its "nature and character;" nor is there any obscurity in the allegations of the bill, as to the amount due.

But the statute of limitations was suspended from January 1, 1862, to April 1, 1867, the suspension being one year after the war. The peace proclamation was issued April 6, 1866, which determined the war. Two years, then, have elapsed since January 1, 1862, during which the statutory time has run.

This whole doctrine of "staleness," rests on the predicate that there is danger of fraud and imposition, in trumping up claims, after the evidence has been lost, and after parties have reposed in confidence that there would be no disturbance. There is no such danger in this instance. The amount of the debt is certain, the items have been canvassed and agreed upon by all the parties. The controlling feature in this case is, that the trust is a continuing one, not the ordinary case of a mortgage to secure a debt, when the corpus of the property is pledged, and when the statute of limitations begins to run, from the maturity of the debt, and the

title of the mortgagee becomes absolute, by a breach of the condition.

TARBELL, J. :

In September, 1869, Edward McGehee filed his bill of complaint in the chancery court of Wilkinson county, setting forth, that in 1849, Nancy Pinson, Daniel B. Pinson, and Elizabeth A. Pinson, executed and delivered to him a deed in fee simple to certain lands and negroes, particularly described in the bill and exhibit of conveyance, with conditions for the payment by him of certain debts due by the Pinsons to be repaid out of the proceeds of the lands conveyed, which he was to control and manage for his greater security ; that he entered upon the execution of the " arrangement," managing the plantation and negroes, and paying debts, and so continued until about 1856–7, when an account was taken between the parties, and there was found due him $8,000 ; that at the request of himself and Nancy Pinson, Daniel B. Pinson, as his agent, undertook the management of the plantation and negroes, and so continued until his death, which occurred " some time in 1858;" that thereupon Nancy Pinson, with the consent of complainant, " continued " the management of the plantation and negroes, with the understanding that the proceeds of the crops were to be applied as under " previous arrangements;" that the sum of $8,000, with the interest, is due complainant, who claims that the plantation has become vested in him, subject, however, to redemption in equity, upon payment. The complaint concludes with the usual prayer for subpœna, that an account be taken for sale of the property, etc.

The deed executed by Nancy Pinson, Daniel B. Pinson, and Elizabeth A. Pinson, February 19, 1849, is given as an exhibit, and made a part of the bill.

Pending these transactions and proceedings, D. B. and E. A. Pinson died, and their heirs are made parties to the bill. To the bill the defendants demurred, generally, for want of equity on the face of the bill, and especially assigned the following causes :

1st. Because action was not commenced within three years next after the cause of action accrued.

2d. Because not commenced within seven years, etc.

3d. Because the demand is stale.

4th. Because the allegations of the bill are indefinite and uncertain, and the representatives of D. B. and E. A. Pinson are not made parties.

The court below overruled the demurrer, and from this decree the case comes to this court. The only cause of error assigned is the overruling of the demurrer.

After a careful examination of the bill, as well as the arguments of counsel, we are of the opinion that this case is one which ought to be heard upon its merits. Upon the face of the bill, no question arises under the statute of limitations. An account was taken by referees in 1856–7, but the "arrangement" between the parties remained unchanged, D. B. Pinson acting from the time of, or soon after, this settlement, as the agent of McGehee in the management of the business, until the death of Pinson, some time in 1858, the precise date not given. The bill alleges in general terms that, after the death of D. B. Pinson, the "previous arrangements" were "continued" by Mrs. Pinson. The statute of limitations was suspended from January 29, 1862, to April 6, 1867, a little over five years and two months. Conceding the most favorable construction in favor of the defendant, yet the complainant had until March 6, 1871, in which to bring his action.

We do not intend, however, to express any opinion as to the precise period, when, in a case of this kind, the statute would commence to run; but only, that upon the face of the bill, the action was clearly commenced within the limitation prescribed.

So upon its face, the bill apparently presents a case entitled to the relief sought. It is at least one which calls for a response, and a full hearing upon the merits. Should the case come again to this court, we shall have the facts before us, when we can properly determine the questions discussed by counsel.

The decree in this case is affirmed and the cause remanded to the docket of the chancery court of Wilkinson county, with leave to the defendants to answer within sixty days.

SIMRALL, J., takes no part in this decision.